FILED

2025 Jan-03  PM 01:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **PORTER CAPITAL CORPORATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:24-cv-00484-RDP** |
| | } | |
| **SUNSET LOGISTICS, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on the Second Motion to Dismiss filed by Defendants Capstone Fuel Services, Inc.; Sunset Tank Express, Inc.; and Tammy Sue Glidewell, in her capacity as Executor of the Estate of John Glidewell ("Defendants") (Doc. # 45) and the Motion to Strike Jury Demand filed by Plaintiff Porter Capital Corporation ("Porter Capital"). (Doc. # 58). The Motions have been fully briefed.[1] (Docs. # 45, 49; 58, 61, 62). After careful consideration, the court concludes that Defendants' Second Motion to Dismiss (Doc. # 45) is due to be denied,[2] and Porter Capital's Motion to Strike Jury Demand (Doc. # 58) is due to be denied.

---

[1] Regarding the Second Motion to Dismiss (Doc. # 45), movants, Defendants, have not filed a Reply. According to Exhibit B of the court's Initial Order (Doc. # 39), the movant's reply brief shall be filed no later than five (5) calendar days after the date on which the opponent's responsive brief is filed. (*Id.* at 24). Because the responsive brief was filed on August 22, 2024, the deadline for a reply brief has passed. Defendants did not file a reply; therefore, the court proceeds as if the Motion (Doc. # 45) has been fully briefed.

[2] The court recognizes that this case is stayed as to the following Defendants who have filed for bankruptcy protection: Sunset Express, Inc.; Sunset Logistics, Inc.; Mobile Fleet Marketing, Inc; Glidewell Leasing Company, LP; Sun-Teach Leasing of Texas, LP. (Doc. # 65). However, because there are remaining Defendants who have not filed for bankruptcy protection, the court may rule on this Motion to Dismiss as to them. And when the previously listed entities' bankruptcy cases are resolved, this opinion and contemporaneously filed order will also apply to them.

## I.    Background

On April 17, 2024, Porter Capital Corporation ("Porter Capital") filed its initial complaint against Defendants Sunset Logistics, Inc.; Mobile Fleet Marketing, Inc.; Alpine Aggregate Transport, Inc.; Sunset Express, Inc.; Capstone Fuel Services, Inc.; Sunset Tank Express, Inc.; Glidewell Leasing Company, Limited Partnership; Sun-Tech Leasing of Texas, LP; the Estate of John Glidewell; David Malay; and Track Line, LLC, asserting claims of breach of contract, breach of guarantees, and possession/detinue. (Doc. # 1).

On July 31, 2024, Porter Capital filed its First Amended Complaint against all of the previously mentioned Defendants with the exception of the Estate of John Glidewell. (*See* Doc. # 43 at 1-3 (listing Defendants)). Porter Capital substituted the Estate of John Glidewell with Defendant Tammy Sue Glidewell, who is the executor of the Estate of John Glidewell. (*Id.* ¶ 10). The First Amended Complaint asserts the same claims as the initial complaint: breach of contract, breach of guarantees, and possession/detinue. (*Id.* ¶¶ 27-38).

In its complaint, Porter Capital alleges that on or about March 4, 2021, it entered into a Recourse Receivables Purchase & Security Agreement (the "Factoring Agreement") with Seller Companies.[3] (*Id.* ¶ 16). According to Porter Capital, the Factoring Agreement provides a framework through which the Seller Companies could obtain immediate working capital through the sale of certain accounts receivables (defined as "Accounts" under the Factoring Agreement) to Porter Capital, the "Purchaser." (*Id.* ¶ 17). Porter Capital alleges that because the Factoring Agreement is a "recourse" rather than a "non-recourse" agreement, the Seller Companies remained

---

[3] Porter Capital does not specifically define who the Seller Companies are in either its initial Complaint or First Amended Complaint. (*See* Docs. # 1, 43). However, Plaintiff attached what it alleges is the Factoring Agreement, which defines the "Seller" as Sunset Logistics, Inc.; Mobile Fleet Marketing, Inc.; Alpine Aggregate Transport, Inc.; Sunset Express, Inc.; Capstone Fuel Services, Inc.; Sunset Tank Express, Inc.; Glidewell Leasing Company, Limited Partnership; and Sun-Tech Leasing of Texas, LP. (*See* Doc. # 43-1 at 2 (defining the "Seller")). Therefore, pursuant to the attached Factoring Agreement, the court finds that the listed entities are the Seller Companies.

liable for any amount advanced in connection with the purchase of an Account under the Factoring Agreement when the Account is not paid under its terms. (*Id.*).

Porter Capital contends that once it purchased an Account, it became the sole owner of the Account, thereby retaining all rights to payment. (*Id.* ¶ 18). According to Porter Capital, the Seller Companies then became obligated to immediately deposit all funds received in connection with such Purchased Account into a controlled account as designated under the Factoring Agreement. (*Id.*). And as alleged, Porter Capital retained the right to collect such amounts owed on all Purchased Accounts directly from the applicable account debtor in the event of default. (*Id.*).

Porter Capital also alleges that when it purchased an Account, it would advance to the Seller Companies an amount equal to up to 95% of the Account's face amount and the remaining amount that was not advanced was held by Porter Capital and applied to Seller's "Reserve Account," which, according to the Factoring Agreement, is a ledger maintained by Porter Capital throughout the duration of the relationship. (*Id.* ¶ 19). Porter Capital alleges that pursuant to the Factoring Agreement, (1) Seller agreed to pay to Porter Capital a fixed interest component and additional term fees that fluctuated depending on the payment term of each Account and the minimum average monthly volume, and (2) in the event of default, these term fees increased. (*Id.* ¶ 20).

According to Porter Capital, in March 2021, it purchased Accounts from the Seller Companies with a face amount of $3,055,953.03 and advanced to them the total sum of $2,460,061.08. (*Id.* ¶ 21). Porter Capital also alleges that on or around June 16, 2022, it executed an amendment to the Factoring Agreement with the Seller Companies, whereby Porter Capital purchased additional Accounts and increased the amount advanced to the Seller Companies. (*Id.* ¶ 22). Porter Capital contends that the amendment incorporates the terms of the Factoring

Agreement and states that the Agreement's terms remain in full force and effect. (*Id.*). According to Porter Capital, John Glidewell executed the amendment[4] as both President of the Seller Companies and the individual guarantor of the Seller Companies' obligations. (*Id.*).

Porter Capital further alleges that in January 2024, the Seller Companies stopped submitting Accounts for purchase. (*Id.* ¶ 23). Porter Capital claims that around this time it learned that that its Purchased Accounts were subject to garnishment proceedings (*id.* ¶ 24) and that its two most significant Purchased Accounts were subject to dispute and unlikely to be paid. (*Id.* ¶ 25). According to Porter Capital, on February 20, 2024, it notified the Seller Companies that multiple events of default had occurred as a result of the garnishment proceedings and the Seller Companies' failure to timely pay their obligations under the Factoring Agreement. (*Id.* ¶ 27). Porter Capital alleges that at that time the total outstanding balance was $5,003,651.58. (*Id.*). Additionally, Porter Capital alleges that around that time, it accelerated all obligations due under the Factoring Agreement and set a deadline of February 26, 2024 for the Seller Companies to pay the full outstanding balance. (*See id.* (citing Doc. # 43-2, the letter sent to Seller Companies regarding the acceleration and deadline)).

Porter Capital contends that the Seller Companies have not made any payments related to the obligations owed under the Factoring Agreement and, as of April 3, 2024, the outstanding balance was $5,009,556.51 (plus accruing costs and expenses). (*Id.* ¶ 28).

According to Porter Capital, the Factoring Agreement is secured by the personal guarantees of John Glidewell ("Glidewell"), David Malay ("Malay"), and Track Line, LLC. (*Id.* ¶ 29). Porter Capital further alleges that John Glidewell was the original owner of the Seller Companies, but after he passed away in May 2023, Malay and his company Track Line, LLC executed individual

---

[4] Porter Capital provides in its complaint that "[t]he Factoring Agreement as amended is still referred to herein as the 'Factoring Agreement.'" (*Id.* ¶ 22).

and entity guarantees on behalf of all Seller Companies besides Alpine Aggregate Transport, Inc. ("Alpine"). (*See id.* ¶ 30 (citing Doc. # 43-3 (Malay and Track Line, LLC's Guarantee Agreement))). Also, according to Porter Capital's Complaint, the Estate of John Glidewell ("the Estate") has assumed Glidewell's obligations under his personal guarantee with respect to Alpine. (*Id.* ¶ 31).

In its Complaint, Porter Capital notes that the Estate, Malay, and Track Line, LLC are collectively referred to as the "Guarantors." (*Id.*). Porter Capital alleges that the Guarantee Agreements specifically provide that the Guarantors "absolutely, unconditionally, and irrevocably, jointly and severally, guarantee to Purchaser the prompt payment and performance of the Obligations . . . along with all other obligations of Seller . . . of every kind and character now or hereafter owed to Purchaser." (*Id.* ¶ 32). Porter Capital also alleges that the Factoring Agreement is further secured by a first-priority security interest in favor of Porter Capital in the Seller Companies' Accounts and Inventory. (*Id.* ¶ 33). According to Porter Capital, it perfected its security interest by filing a UCC financing statement with the Texas Secretary of State on March 8, 2021.[5] (*Id.*)

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked

---

[5] The financing statement is allegedly recorded as Instrument No. 210008857172. (*Id.*).

assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

III.     **Analysis**

Porter Capital asserts the following claims: breach of contract against the Seller Companies (Count One); breach of guarantees against the Guarantors (Count Two); and possession/detinue against the Seller Companies (Count Three). (Doc. # 43). Defendants argue that all of Porter Capital's claims should be dismissed because (1) the Tarrant County Probate Court has dominant jurisdiction; (2) Porter Capital has failed to state a claim for breach of contract; and (3) Porter Capital's pleading fails to plead with particularity as to each defendant. (Doc. # 45-1). The court addresses each of Defendants' arguments, in turn.

A.     **Dominant Jurisdiction**

Defendants contend that the court should dismiss this matter because the Tarrant County Probate Court of Texas has dominant jurisdiction as it has the first-filed case. (*Id.* at 4-6). Defendants' argument rests on the grounds that Porter Capital's First Amended Complaint substitutes Tammy Sue Glidewell in her capacity as the Executor of the Estate of John Glidewell. (*Cf.* Docs. # 43 ¶¶ 2-12 (listing Defendants); 1 ¶¶ 2-12 (listing Defendants)). Because of this substitution, Defendants argue that this matter has now become the second-filed case, falling behind the probate proceeding involving the Estate of John Glidewell in the Tarrant County Probate Court. (Doc. # 45-1 at 4-6). Defendants' argument lacks legal and logical merit.

Defendants attempt to invoke the "first-filed rule," which holds that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). However, the first-filed rule is not applicable here because two federal courts are not involved. Obviously, the case pending in the Tarrant County Probate Court was filed in state court. Moreover, even if the other pending case

7

were in federal court, the instant action was the first-filed case as it was filed on April 17, 2024 (*see* Doc. # 1), while the probate court petition was not amended to add Porter Capital as a party until April 24, 2024. (*See* Tarrant County Probate Court, Case No. 2023-PRO1912-2). The fact that Porter Capital has filed an amended complaint and substituted a party (who is a party in the pending probate proceeding) does not change the filing date of the first-filed action. *See* Fed. R. Civ. P. 15(c) (allowing an amended complaint to relate back to the date of the original complaint). For these reasons, the court declines to dismiss Plaintiff's complaint based on Defendants' argument that the Tarrant County Probate Court has dominant jurisdiction.

### B.    Failure to State a Claim for Breach of Contract

Defendants also contend that Porter Capital has failed to state a claim for breach of contract against the Seller Companies and the Guarantors. (Doc. # 45-1 at 6-7). The court concludes that this argument is meritless.

In its complaint, Porter Capital asserts two breach of contract claims: one against the Seller Companies (Count One) (Doc. # 43 at 8-9 ¶¶ 27-31) and one against the Guarantors (Count Two). (*Id.* at 9 ¶¶ 32-35). As to its claim against the Seller Companies, Porter Capital alleges that (1) it entered into a written contract (the Factoring Agreement) with the Seller Companies, "under which Porter Capital purchased certain Accounts from the Seller Companies, and in connection with such purchases, advanced funds in excess of $4,300,000" (*id.* at 8 ¶ 28); (2) that "[t]he Seller Companies agreed to ensure repayment of all amounts advanced by Porter Capital in connection with the Purchased Accounts and to pay all fees and monetary obligations set forth under the Factoring Agreement" (*id.* ¶ 29); (3) that the Seller Companies "have breached the terms of the Factoring Agreement by failing to pay all Obligations due thereunder" (*id.* ¶ 30); and (4) that pursuant to the Factoring Agreement, the Seller Companies owe Porter Capital $5,009,556.51. (*Id.* at 9 ¶ 31).

Despite these specific allegations in the complaint, Defendants assert that Porter Capital has failed to state a claim for breach of contract based on the Factoring Agreement because it did not attach the amendment to the Factoring Agreement.[6] (Doc. # 45-1 at 6-7). But "[n]o Federal Rule of Civil Procedure requires a copy of the contract to be attached to a complaint alleging a breach of contract claim." *Nurradin v. Tuskegee Univ.*, 2022 WL 808693, at *9 (M.D. Ala. Mar. 16, 2022); *see also Grayson Inc. v. Glob. Payments Direct, Inc.*, 2013 WL 5719087, at *3 (N.D. Ala. Oct. 18, 2013) ("No federal rule requires a party asserting breach of contract to attach the contract."). Federal Rule of Civil Procedure 8(a) only requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," include "a demand for the relief sought," and contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 566 U.S. at 678. Porter Capital has done so.

Under Alabama law,[7] the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Here, Porter Capital's complaint alleges that Porter Capital had a Factoring Agreement with the Seller Companies; that the Seller Companies agreed to pay all fees and monetary obligations pursuant to the Factoring Agreement; that Seller Companies breached the

---

[6] In its complaint, Porter Capital alleges that "[o]n or around June 16, 2022" it executed an amendment to the Factoring Agreement with the Seller Companies, "whereby Porter Capital purchased additional Accounts and increased the amount advanced to the Seller Companies." (Doc. # 43 ¶ 22). Porter Capital also alleges that the amendment "incorporates the terms of the Factoring Agreement and states that the Agreement's terms remain in full force and effect." (*Id.*).

[7] The court preliminarily finds that Alabama law governs Porter Capital's breach of contract claims because the Factoring Agreement provides under its Choice of Law provision that "This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of Alabama." (Doc. # 43-1 at 8). Additionally, neither Porter Capital nor Defendants dispute that Alabama law governs Porter Capital's breach of contract claims.

Factoring Agreement by failing to pay their obligations; and that Porter Capital is owed approximately $5,009,556.51. (Doc. # 43 at 8-9 ¶¶ 27-31). Based upon these allegations, the court concludes that Porter Capital has pled a plausible breach of contract claim against the Seller Companies sufficient to survive Defendants' motion to dismiss.

As to its claims against the Guarantors, Porter Capital alleges that "the Guarantors delivered unlimited continuing guarantees for all obligations owed then and in the future by the Seller Companies to the Porter Capital, including all attorney fees and interest owed by the Seller Companies." (*Id.* ¶ 33). And Porter Capital alleges that "[t]he Guarantors breached said Guarantee Agreements by failing to pay the amounts due under said Factoring Agreement after default by the Seller Companies" (*id.* ¶ 34) and, as such, Guarantors owe Porter Capital $5,009,556.51. (*Id.* ¶ 35).

Defendants contend that Porter Capital has "failed to state a claim upon which relief may be granted against [the Guarantors] by failing to plead the terms of each contract for the sale of Accounts that occurred and which defendant made each Account sale." (Doc. # 45-1 at 7). In response, Porter Capital argues that Defendants misunderstand Porter Capital's allegations as "Porter Capital alleges that the Factoring Agreement (rather than individual sales contracts) governs the parties' obligations with respect to Purchased Accounts." (Doc. # 49 at 6). Viewing the allegations in the complaint in the light most favorable to the nonmovant, Porter Capital, the court concludes that Porter Capital has sufficiently pled a plausible claim for breach of contract against the Guarantors. Porter Capital has alleged that the Guarantors delivered guarantees for all obligations owed by the Seller Companies to Porter Capital; that the Guarantors breached the Guarantee Agreements by failing to pay the amounts due under the Factoring Agreement; and that

the Guarantors owe Porter Capital $5,009,556.51. (Doc. # 43 at 9 ¶¶ 33-35). Thus, Porter Capital has sufficiently alleged a breach of contract claim against the Guarantors.

###    C.    Failure to Plead with Particularity

Defendants also aver that Porter Capital "improperly asserts claims against all defendants, lumping them together as the 'Seller Companies' without separating any specific action, omission, consideration, performance, breach, or cause of action against any of the defendants individually." (Doc. # 45-1 at 7). The court finds that this argument also fails.

In support of its argument, Defendants cite to the Eleventh Circuit's decision in *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). (Doc. # 45-1 at 7). However, *Kyle K.* does not support Defendants' argument here. Rather, *Kyle K.* actually supports Porter Capital's contention, which is that collective allegations do not render a complaint deficient where the "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Id.* Here, Porter Capital has alleged that the Seller Companies, which are collectively defined as the "Seller" in the Factoring Agreement, jointly breached the Factoring Agreement by failing to pay the outstanding balance and fees owed under the Factoring Agreement. Under these circumstances, the court determines that Porter Capital may refer to the Seller Companies collectively. *See Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) ("[A] plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as 'defendants.' These collective allegations are construed as applying to each defendant individually.").

### D.     Motion to Strike Jury Demand

Porter Capital filed a Motion to Strike Jury Demand (Doc. # 58) after Defendants Malay and Track Line, LLC filed their answer to the First Amended Complaint, wherein they included a jury demand. (Doc. # 56). As stated in the court's Order (Doc. # 65), this case is dismissed as to several defendants pending their proceedings in the United States Bankruptcy Court for the Northern District of Texas. Because of these pending proceedings, Porter Capital's motion (Doc. # 58) is due to be denied but the court notes that it may be raised at a later point in time if and when this case proceeds to trial.

## IV.    Conclusion

For the reasons explained above, Defendants' Motion to Dismiss (Doc. # 45) and Porter Capital's Motion to Strike Jury Demand (Doc. # 58) are due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this January 3, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE