FILED

2025 Jan-29  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PORTER CAPITAL CORPORATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  2:24-cv-00484-RDP** |
| | } | |
| **SUNSET LOGISTICS INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on Plaintiff Porter Capital Corporation's ("Porter Capital") Motion for Entry of Default Judgment. (Doc. # 57). Porter Capital seeks entry of default judgment against Defendant Alpine Aggregate Transport, Inc. ("Alpine") for what it contends is a sum certain damages amount. (*Id.*). Porter Capital also seeks attorneys' fees and a judgment that it is entitled to certain property. (*Id.*).

Porter Capital does not expressly seek entry of default as to liability, although the court construes its motion to include such a request because a finding of liability is a prerequisite for awarding damages. After careful consideration, the court concludes that Plaintiff's Motion is due to be granted in part and denied in part.

## I.    Background

On April 17, 2024, Porter Capital filed its initial Complaint, asserting claims against Alpine and several other defendants for breach of contract, breach of guarantees, and possession/detinue. (Doc. # 1). On July 31, 2024, Porter Capital filed its First Amended Complaint, which asserts those same claims against Alpine. (Doc. # 43).

In its Amended Complaint, Porter Capital alleges that on or about March 4, 2021, it entered into a Recourse Receivables Purchase & Security Agreement (the "Factoring Agreement") with Alpine and other defendant Seller Companies.[1] (*Id.* ¶ 16). According to Porter Capital, the Factoring Agreement provides a framework through which Alpine and the other Seller Companies could obtain immediate working capital through the sale of certain accounts receivables (defined as "Accounts" under the Factoring Agreement) to Porter Capital, the "Purchaser." (*Id.* ¶ 17). Porter Capital alleges that because the Factoring Agreement is a "recourse" rather than a "non-recourse" agreement, Alpine and the other Seller Companies remained liable for any amount advanced in connection with the purchase of an Account under the Factoring Agreement when such Account is not paid under its terms. (*Id.*).

Porter Capital contends that once it purchased an Account, it became the sole owner of the Purchased Account, thereby retaining all rights to payments to that Account. (*Id.* ¶ 18). According to Porter Capital, Alpine and the other Seller Companies then became obligated to immediately deposit all funds received in connection with such Purchased Account into a controlled account as designated under the Factoring Agreement. (*Id.*). Porter Capital retained the right to collect such amounts owed on all Purchased Accounts directly from the applicable account debtor in the event of default. (*Id.*).

Porter Capital also alleges that when it purchased an Account, it would advance to Alpine and the other Seller Companies an amount equal to up to 95% of the Account's face amount and the remaining amount that was not advanced was held by Porter Capital and applied to Seller's "Reserve Account," which, according to the Factoring Agreement, is a ledger maintained by Porter

---

[1] The other defendant Seller Companies include Sunset Logistics, Inc.; Mobile Fleet Marketing, Inc.; Sunset Express, Inc.; Capstone Fuel Services, Inc.; Sunset Tank Express, Inc.; Glidewell Leasing Company, Limited Partnership; and Sun-Tech Leasing of Texas, L.P.

Capital throughout the duration of the parties' relationship. (*Id.* ¶ 19). Porter Capital alleges that pursuant to the Factoring Agreement: (1) Alpine and the other Seller Companies agreed to pay to Porter Capital a fixed interest component and additional term fees that fluctuated depending on the payment term of each Purchased Account and the minimum average monthly volume; (2) provided, however, that in the event of default, these term fees increased. (*Id.* ¶ 20).

According to Porter Capital, in March 2021, it purchased Accounts from Alpine and the other Seller Companies with a face amount of $3,055,953.03 and advanced to them the total sum of $2,460,061.08. (*Id.* ¶ 21). Porter Capital also alleges that on or around June 16, 2022, it executed an amendment to the Factoring Agreement with Alpine and the other Seller Companies, whereby Porter Capital purchased additional Accounts and increased the amount advanced to Alpine and the other Seller Companies. (*Id.* ¶ 22). Porter Capital contends that the amendment incorporates the terms of the Factoring Agreement and states that the Agreement's terms remain in full force and effect. (*Id.*). According to Porter Capital, John Glidewell executed the amendment[2] as both President of the Seller Companies and the individual guarantor of the Seller Companies' obligations. (*Id.*).

Porter Capital further alleges that in January 2024, Alpine and the other Seller Companies stopped submitting Accounts for purchase. (*Id.* ¶ 23). Porter Capital claims that around this time it learned that that its Purchased Accounts were subject to third-party garnishment proceedings (*id.* ¶ 24) and that its two most significant Purchased Accounts were subject to dispute and unlikely to be paid. (*Id.* ¶ 25). According to Porter Capital, on February 20, 2024, it notified Alpine and the other Seller Companies that multiple events of default had occurred as a result of the garnishment proceedings and Alpine and the other Seller Companies' failure to timely pay their obligations

---

[2] Porter Capital states in its Complaint that "[t]he Factoring Agreement as amended is still referred to herein as the 'Factoring Agreement.'" (*Id.* ¶ 22).

under the Factoring Agreement. (*Id.* ¶ 27). Porter Capital alleges that at that time the total outstanding balance was $5,003,651.58. (*Id.*). Additionally, Porter Capital asserts that around that time, it accelerated all obligations due under the Factoring Agreement and set a deadline of February 26, 2024 for Alpine and the other Seller Companies to pay the full outstanding balance. (*See id.*) (citing Doc. # 43-2, the letter sent to Alpine and the other Seller Companies regarding the acceleration and deadline).

Porter Capital asserts that Alpine and the other Seller Companies have not made any payments related to the obligations owed under the Factoring Agreement, and as of April 3, 2024, the outstanding balance was $5,009,556.51 (plus accruing costs and expenses). (*Id.* ¶ 28).

According to Porter Capital, the Factoring Agreement is secured by the personal guarantees of John Glidewell ("Glidewell"), David Malay ("Malay"), and Track Line, LLC. (*Id.* ¶ 29). Porter Capital further alleges that Glidewell was the original owner of the Seller Companies, but after he passed away in May 2023, Malay and his company Track Line, LLC executed individual and entity guarantees on behalf of all Seller Companies with the exception of Alpine. (*See id.* ¶ 30) (citing Doc. # 43-3 (Malay and Track Line, LLC's Guarantee Agreement)). Also, according to Porter Capital's Complaint, the Estate of John Glidewell ("Glidewell's Estate") has assumed Glidewell's obligations under his personal guarantee with respect to Alpine. (*Id.* ¶ 31).

In its Complaint, Porter Capital notes that Glidewell's Estate, Malay, and Track Line, LLC are collectively referred to as the "Guarantors." (*Id.*). And, Porter Capital further alleges that the Guarantee Agreements specifically provide that the Guarantors "absolutely, unconditionally, and irrevocably, jointly and severally, guarantee to Purchaser the prompt payment and performance of the Obligations . . . along with all other obligations of Seller . . . of every kind and character now or hereafter owed to Purchaser." (*Id.* ¶ 32). Porter Capital also asserts that the Factoring Agreement

is further secured by a first-priority security interest in favor of Porter Capital in the Seller Companies' Accounts and Inventory. (*Id.* ¶ 33). According to Porter Capital, it perfected its security interest by filing a UCC financing statement with the Texas Secretary of State on March 8, 2021.[3] (*Id.*)

After filing its initial Complaint, on July 8, 2024, Porter Capital served Alpine. (Doc. # 24). Despite being properly served, Alpine failed to answer or otherwise respond. (Doc. # 57 ¶ 2). Following the entry of default by the Clerk of Court on July 31, 2024 (Doc. # 42),[4] Porter Capital filed the instant Motion for Entry of Default Judgment[5] seeking a default judgment against Alpine in the amount of $3,122,995.08. (Doc. # 57). Porter Capital also seeks attorneys' fees and a judgment that it is entitled to possession of property consistent with its alleged perfected security interest. (*Id.* at ¶¶ 9-10).

## II.    Standard of Review

When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). However, entry of default judgment is only appropriate when there is "a sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted). Under this standard, the complaint must contain sufficient factual matter to state a claim for relief that is plausible on its

---

[3] The financing statement is purportedly recorded as Instrument No. 210008857172. (*Id.*).

[4] In addition to Alpine, the Clerk of Court also entered defaults against the other defendant Seller Companies. (Doc. # 42). However, in its Motion for Default Judgment, Porter Capital states that it does not move for default judgment against the other defendant Seller Companies as they have pending bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Texas. (*See* Doc. # 57 at 1 n.1). Further, as indicated by the court's Order (Doc. # 65), this case is stayed as to those defendant Seller Companies which have filed for bankruptcy protection: Sunset Express, Inc.; Sunset Logistics, Inc.; Mobile Fleet Marketing, Inc.; Glidewell Leasing Company, LP; and Sun-Tech Leasing of Texas, LP.

[5] In the Joint Status Report filed on January 17, 2025, Porter Capital contends that "David Coy, President of Alpine Aggregate, contacted counsel for Porter Capital in October 2024" and that "Coy received a copy of the Motion for Default Judgment, yet Alpine Aggregate still failed to appear in this lawsuit." (Doc. # 69 at 2).

face, similar to that of a motion to dismiss under Rule 12(b)(6). *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted).

## III.    Analysis

Porter Capital asserts a breach of contract claim and a claim for possession/detinue against Alpine and the other Seller Companies. (Doc. # 43 ¶¶ 27-31, 36-38). Below, the court addresses whether Porter Capital is entitled to a default judgment on these claims.

### A.    Porter Capital's Claims

#### 1.    Breach of Contract Claim

As to the breach of contract claim, Porter Capital specifically alleges that Alpine and the other Seller Companies breached the Factoring Agreement. (*Id.* ¶¶ 27-31). Under Alabama law,[6] the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002).

Here, Porter Capital's Complaint alleges that Porter Capital entered into a Factoring Agreement with Alpine and the other Seller Companies; that Alpine and the other Seller

---

[6] As the court noted in a previous memorandum opinion, the court preliminarily finds that Alabama law governs Porter Capital's breach of contract claim because the Factoring Agreement provides under its Choice of Law provision that "[t]his Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of Alabama." (*See* Doc. # 66 at 9 n.7 (quoting Doc. # 43-1 at 8)).

Companies agreed to pay all fees and monetary obligations pursuant to the Factoring Agreement; that Alpine and the other Seller Companies breached the Factoring Agreement by failing to pay their obligations; and that Porter Capital is owed approximately $5,009,556.51. (Doc. # 43 ¶¶ 27-31). In its Motion for Default Judgment, Porter Capital specifically alleges that as of the filing of its Motion, Alpine owes Porter Capital $3,122,995.08 of the total $5,009,556.51 allegedly owed by the Seller Companies. (Doc. # 57 ¶ 6). These now admitted allegations are sufficient to establish that Alpine breached the Factoring Agreement. Therefore, Porter Capital is entitled to a default judgment on its breach of contract claim against Alpine.

### 2.    Porter Capital's Possession/Detinue Claim

As to its possession/detinue claim, Porter Capital claims possession from the Seller Companies of the following property described in the UCC filing:

> All Assets[,] Any Collateral now or hereafter described in any agreement from Debtor to Secured Party[,] All of Debtor's personal property, both now owned and hereafter acquired, and wherever located, including but not limited to: Accounts (including Accounts purchased by Secured Party hereunder and repurchased by Debtor); Chattel Paper; Deposit Accounts; Documents; Equipment; Farm Products; Fixtures; General Intangibles; Goods; Instruments; Inventory; Investment Property; Letter or Credit Rights; and the Proceeds or Proceeds of Proceeds of all of the foregoing, including, without limitation, all insurance proceeds of or damage to any of the foregoing . . .

(Doc. # 43 ¶ 37). Porter Capital also claims value for the hire or use thereof during its wrongful detention. (*Id.* ¶ 38). In its Motion for Default Judgment, Porter Capital states that it "seeks a judgment that it is entitled to possession from Alpine consistent with its perfected security interest" in the property described above. (Doc. # 57 at 4). Porter Capital also states, "In the event [it] successfully takes possession of any described property, Porter Capital intends to use such possession as an offset of Alpine's indebtedness." (*Id.* at 5). In support of this request, Porter Capital has attached the UCC financing statement, which was filed on March 8, 2021 and includes

the description of the collateral which is the property described above. (Doc. # 57-7 at 2). The UCC financing statement also includes Alpine as a debtor. (*See id.* at 3).

Under Alabama law, "'the plaintiff has the burden of proof [in a detinue action] to show that the plaintiff had legal title to the property or right to possession at the time of the action and that the defendant had wrongfully taken possession of the property.'" *Thackston v. Key*, 92 So. 3d 788, 791 (Ala. Civ. App. 2012) (quoting *Heathcock v. Hadley*, 380 So. 2d 915, 916 (Ala. Civ. App. 1980). *See also Murray v. Dempsey*, 521 So. 2d 1345, 1345-46 (Ala. Civ. App. 1988) (claimant in detinue case bears burden of proof). And, in general, for a default judgment, "judgment may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1358 (S.D. Ga. 2004).

Porter Capital's allegations are insufficient to state a claim for possession/detinue. Porter Capital merely recites the description of the collateral from the UCC financing statement to support its claim for possession/detinue. It fails to show that it had legal title to the property at the time of the action or how Alpine had wrongfully taken possession of the property. Thus, Porter Capital has failed to state a claim for possession/detinue. Additionally, Porter Capital did not include any allegations in its pleading that support its possession/detinue claim in its Motion for Default Judgment. (Doc. # 57). Defaulting Defendants have only admitted the well-pleaded facts alleged in the complaint to which they have failed to respond. They have not through their default admitted facts contained in an after-default filing of the UCC document.

There is another obstacle to Porter Capital's possession/detinue claim. The UCC financing statement Porter Capital attached to its Motion for Default Judgment includes several other named debtors, such as Sunset Logistics, Inc; Mobile Fleet Marketing, Inc.; Sunset Express, Inc.;

Capstone Fuel Services, Inc.; Sunset Tank Express, Inc.; Glidewell Leasing Company, Limited Partnership; and Sun-Tech Leasing of Texas, LP. The court stayed this case as to those defendants (except for Capstone Fuel Services, Inc.) in its Order. (Doc. # 65). Under the bankruptcy code, the filing of a bankruptcy petition operates as an automatic stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Thus, because several of the debtors on the UCC financing statement have filed bankruptcy petitions, and the description of collateral covers their property, the court finds that it may not exercise control over such collateral in light of the automatic stay.

**B.    Damages**

Even when a defendant has defaulted, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). Unless a plaintiff's claim against a defaulting defendant is for "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), the court must hold an evidentiary hearing to determine the amount of damages. *Adolph Coors Co.*, 777 F.2d at 1543; *SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005); *see also Pigeon v. Straub Builders, LLC*, 2024 WL 4043825, at *2 (S.D. Ala. Sept. 4, 2024) ("'Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required.'" (quoting *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593-94 (S.D. Ala. 2007))).

Here, Porter Capital seeks an award of damages against Alpine in the sum certain amount of $3,122,995.08 for its breach of contract claim. (Doc. # 57). The total amount claimed against all Defendants in Porter Capital's Complaint is $ 5,009,556.51. (Doc. # 43). The court finds that Porter Capital has provided adequate evidence to support its request for the lesser included amount. In its Motion, Porter Capital explains how it calculated the sum certain amount. (*See id.*) (noting how the Outstanding Principal Balance and Contractual Minimum Fees were calculated to yield the total balance due from Alpine). Additionally, Porter Capital provided several documents with its Motion, including the Buyout Calculation Report (Doc. # 57-5) and the Client Summary Report. (Doc. # 57-6). Porter Capital also provided an affidavit of Kate Smith, the Senior Vice President and Chief Operating Officer of Porter Capital, in which she attests that she is the custodian of records pertaining to the Alpine account and after reviewing the calculation of the outstanding balance due from Alpine, attests that the sum certain amount is, indeed, $3,122,995.08. (Doc. # 57-3). In her affidavit, Smith also attests that the records Porter Capital attached to its motion relating to the obligations of Alpine are the true and correct copies. (*Id.*). These records include:

 a. A Recourse Receivables Purchase & Security Agreement executed by John Glidewell on behalf of Alpine dated March 4, 2021 [(Doc. # 57-1)];
 b. The First Amendment to the Recourse Receivables Purchase & Security Agreement executed by John Glidewell on behalf of Alpine dated June 16, 2022 [(Doc. # 57-2)];
 c. The Contractual Requirements Analysis dated October 7, 2024 [(Doc. # 57-4)];
 d. The Buyout Calculation Report dated October 7, 2024 [(Doc. # 57-5)];
 e. The Client Summary Report dated October 7, 2024 [(Doc. # 57-6)]; and
 f. A UCC Financing Statement filed on March 8, 2021 with the Texas Secretary of State as Instrument No. 210008857172 [(Doc. # 57-7)]

For these reasons, the court finds that Porter Capital has provided adequate evidence to show a basis for the sum certain amount of damages it seeks for its breach of contract claim.

To the extent that Porter Capital also seeks attorneys' fees and expenses incurred enforcing its rights against Alpine (Doc. # 57 ¶ 9), the court will hold an evidentiary hearing at a later date. *See* Rule 55(b).

## IV.    Conclusion

For the reasons explained above, Porter Capital's Motion for Default Judgment (Doc. # 57) is **GRANTED** as to Alpine's liability under Porter Capital's breach of contract claim and Plaintiff's sum certain amount of damages: $3,122,995.08. The Motion for Default Judgment (Doc. # 57) is **DENIED** as to Alpine's liability under Porter Capital's possession/detinue claim and as to the attorneys' fees pending an evidentiary hearing.

This matter will be **SET** for an evidentiary hearing regarding Porter Capital's attorneys' fees by separate order.

**DONE** and **ORDERED** this January 29, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE